**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRENDAN J. CARTER,<br>Petitioner,<br>v.<br>KATHY BRITTAIN, et al.,<br>Respondents. | CIVIL ACTION NO. 3:24-cv-1130<br><br>(Magistrate Judge Latella) |

**MEMORANDUM**

## I. Introduction

The Petitioner, Brendan J. Carter, a former high school band director, was convicted of numerous sex offenses involving minors in the Court of Common Pleas of Luzerne County after a jury trial on October 2, 2020. On June 3, 2021, he was sentenced to an aggregate term of imprisonment of 84 to 168 months. Carter appealed his conviction and sentence to the Pennsylvania Superior Court which affirmed both the conviction and sentence in an unpublished opinion dated July 10, 2023. Carter did not seek post-conviction relief through Pennsylvania's Post Conviction Relief Act. Instead, this timely *habeas* Petition was filed on July 10, 2024. For the reasons that follow, the Petition will be denied.

## II. Procedural History

This matter was initiated by the filing of a counseled *habeas* Petition pursuant to 28 U.S.C. § 2254 on July 10, 2024. (Doc. 1). The Respondents filed a Response on August 28, 2024. (Doc. 4). The parties consented to the jurisdiction of a united states magistrate judge on January 22, 2025.[1] The Petition is ripe for consideration.

**III. Background**

The background and history of the state court proceedings is taken from the Superior Court's unpublished disposition in *Commonwealth v. Carter*, 2023 WL 4417528, 303 A.3d 745 (Pa. Super. Ct. 2023). To summarize,[2] Carter was a band director and percussion adviser at high schools located in Luzerne County. *Id.* at **1. On October 22, 2018, a mother of one of Carter's students reported allegations of sexual abuse to the Pittston Area High School resource officer, Michael Boone, who then contacted Detective Charles Balogh of the Luzerne County District Attorney's Office. *Id.* The same day, the

[1] The matter was reassigned to the undersigned on June 10, 2025.
[2] Further elaboration will be provided where necessary as it relates to Petitioner's specific claims.

two officers interviewed victims at the Pittston Area High School and learned that Carter was scheduled to meet with the principal at 5 p.m. *Id*. When Carter arrived at the scheduled meeting, the two officers were present and asked Carter if he knew why they were there and Carter purportedly responded that he thought it had to do with misusing funds. *Id.* The officers then advised Carter they were actually there to discuss allegations of inappropriate behavior that several band members made against him. The Superior Court described the encounter as follows:

> Carter agreed to speak with the officers about those allegations, and signed a constitutional waiver form waiving his Miranda rights at 6 p.m. During the conversation, Carter told the officers he had received naked images on his cell phone of former students after they had graduated high school, but remained adamant that he did not have any naked images of current students on his cell phone. Carter agreed to allow Detective Balogh to review the contents of the phone.
>
> Carter informed the detective that he had images stored in his Snapchat application in the folder called "for my eyes only" and provided Detective Balogh with the folder's passcode. There were numerous pictures of males with their penises exposed in the folder, one of which matched the description given to Detective Balogh earlier by A.T., taken when A.T. was 17 years old. Detective

> Balogh also found a picture in the folder of C.E. with his penis exposed, also taken when he was a minor.
>
> At around 7 p.m., Detective Balogh asked Carter if he could audio record a statement from Carter. Carter agreed. Carter affirmed at the beginning of the recording that he had signed the constitutional waiver form and understood his constitutional rights, and explicitly stated he was agreeing to talk with the officers and have his statement audio recorded. The recording started at 6:56 p.m., and ended at 8:03 p.m.
>
> Carter made several admissions while talking to the police. He "admitted that he did solicit images of a current student's penis from a female student. In addition, Carter told investigators that he was forced by a few students to expose himself in the band room closet. Carter also told them that he and two students ejaculated into a pudding cup and gave it to another student with the intention of having him eat it."
>
> Towards the end of the interview, at 8:20 p.m., Carter signed a warrantless search consent form for the phone so that it could be forensically analyzed. Detective Balogh put the phone on airplane mode and placed the phone into evidence.

*Id.* at **1-2 (citations to the record omitted).

On July 29, 2019, Carter was charged with 22 offenses against nine minor victims and trial was originally set for January 13, 2020. *Id.* ** 2. On January 6, 2020, Carter filed a motion to continue the trial and various pretrial motions including: "a motion to compel discovery of, inter alia, Carter's cell phone for forensic examination; a motion to

suppress the statements and the evidence the police obtained from Carter's interview on October 22, 2018; a motion in limine seeking to exclude 'electronic evidence, alleged telephone text messages and photographs, and, alleged internet posts, internet messages and photographs.... and a motion to take the jury to view the locations where the abuse allegedly took place." *Id.* Carter's motion to continue the trial was granted and a hearing on his motions was held on June 9, 2020. *Id.* at **3. The trial court held a suppression hearing and took testimony from Detective Balogh and from Carter and subsequently denied the motion on August 20, 2020.[3] *Id.*

Trial was scheduled for Monday September 28, 2020, but the Friday before, September 25, 2020, Carter filed a motion to continue and for sanctions alleging that the Commonwealth prevented the

[3] "As for the motion in limine, defense counsel asked the court to hold the motion in abeyance because it was 'going to depend on the forensic analysis from the cell phone.' The court granted the defense request, and deferred the motion in limine until trial. Likewise, defense counsel also asked the court to defer the motion for a jury view as the Commonwealth had given the defense photos and a video of the crime scene that defense counsel had not yet viewed but indicated may be sufficient to alleviate the need for a jury view." 2023 WL 4417528 at **3.

defense expert from examining Carter's cell phone. *Id*. at ** 3-4. The trial court denied the motions stating:

> There was a trial date for January 6th. There was an 11th hour omnibus filed. The trial ended up getting continued. And here we are on the eve of trial and we still have the Defense complaining about this phone.
>
> Look, this is not a case involving voluminous digital discovery ... We have two photos at issue. Two photos at issue. And there is no question in the court's mind that the Defendant has had more than ample opportunity to get whatever digital discovery they sought, okay.

*Id*. at ** 5. The matter proceeded to trial and the testimony included the following:

> The victims' testimony included testimony that: Carter had exposed himself to the victims on multiple occasions, and instructed the victims to expose themselves to each other while in his presence; Carter had the victims play a number of different inappropriate games, including truth or dare, the "nervous game," and a game called "Are you?," which meant "Are you circumcised?," after which Carter would ask the responder to "prove it" by exposing his penis.
>
> There was also testimony that: Carter instructed the victims to masturbate into pudding cups, onto cookies and into their hands before slapping another; Carter asked the victims to send or show him naked pictures of them or others and that they did so; and Carter talked about and ranked the sizes of penises. One victim testified that Carter "dared" him to perform oral sex on him, which he did.

Detective Balogh also testified for the Commonwealth. As he did at the suppression hearing, Detective Balogh testified that Carter agreed to talk with him and that he read Carter his *Miranda* warnings from a constitutional waiver form before interviewing him about the allegations. Detective Balogh recounted Carter affirmed he understood the warnings, initialed them, and then signed the form and said he was willing to talk to the officers. Detective Balogh explained Carter agreed to allow him to look at his cell phone, and once he opened the "for my eyes only" folder on Snapchat with the passcode given to him by Carter, he saw numerous images of penises and naked men.

The detective testified he recognized that one of those explicit photos was of victim A.T. based on his earlier discussion with him. He also found a picture of victim C.E. on the phone. Detective Balogh re-interviewed A.T. and C.E. on October 26, 2018, and they identified the photos as being images taken of them when they were minors. These two photos were shown to the jury.

Carter testified on his own behalf. He generally denied the allegations. He did admit he exposed himself to band students on one occasion, but claimed they forced him to do it. He also admitted he had the explicit image of A.T. on his phone, but he insisted it was taken and sent after A.T. turned 18. As for the picture of C.E. shown to the jury, he maintained he did not put that image on his phone.

Carter admitted the constitutional waiver form indicated he had signed it at 6 p.m., but he claimed he did not actually sign the form until 8:30 p.m. He maintained the officers did not read his constitutional rights to him until after the interview was completed. He acknowledged he is heard agreeing at the beginning of the audio-recorded statement that the investigators had gone over his

> constitutional rights with him, and that he understood and was waiving those rights, but claimed he had been instructed to say that.

Id. at ** 5-6. Carter was convicted of all counts against him and was subsequently sentenced to an aggregate term of 84 to 168 months' imprisonment.

## IV. Legal Standards

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal *habeas* review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution

or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

### A. Exhaustion and Procedural Default

A *habeas* petitioner must exhaust state court remedies before obtaining *habeas* relief. 28 U.S.C. § 2254(b)(1)(A). The traditional way to exhaust state court remedies in Pennsylvania was to present a claim to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court. See *Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1230 (3d Cir. 1992). However, in light of Pennsylvania Supreme Court Order No. 218, issued May 9, 2000, ("Order No. 218"), it is no longer necessary for Pennsylvania inmates to seek allocatur from the Pennsylvania Supreme Court in order to exhaust state remedies under 28 U.S.C. § 2254(c). See *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) ("We now hold that Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c)."). The *habeas* petitioner has the burden of proving exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert*, 134 F.3d at 518-19. Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. See *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Werts*, 228 F.3d at 192. To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 192-93 (quoting and citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, a petitioner can rely on post-conviction counsel's

ineffectiveness to establish cause to overcome the default of a substantial claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish prejudice, a petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Bey v. Sup't Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017).

For a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496). This requires that the petitioner supplement his claim with "a colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). In other words, a petitioner must present new, reliable evidence of factual innocence. *Schlup*, 513 U.S. at 324.

### B. Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a *habeas* petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of *habeas* corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless: (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state

court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a *habeas* petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; see also *Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should

the federal *habeas* court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; see also *Williams*, 529 U.S. at 408-09.

## IV. Discussion

### A. *Habeas* Claims Presented for Federal Review

Carter presents five claims for review articulated as follows:

I. GROUND ONE: THE DENIAL OF PETITIONER'S MOTIONS TO SUPRESS STATEMENTS MADE BY THE PETITIONER AND TO SUPRESS CERTAIN EVIDENCE

II. GROUND TWO: TRIAL COURT'S DENIAL OF PETITIONER'S MOTION FOR A JURY VIEW OF THE ALLEGED CRIME SCENE

III. GROUND THREE: TRIAL COURT'S DENIAL OF PETITIONER'S MOTION IN LIMINE TO EXCLUDE ELECTRONIC EVIDENCE SUCH AS SOCIAL MEDIA AND TEXT MESSAGE

IV. GROUND FOUR: THE COURT BELOW ERRED AND VIOLATED THE PETITIONER'S RIGHT TO DUE PROCESS OF LAW IN FAILING GRANT THE PETITIONER'S MOTION FOR SANCTIONS FOR VIOLATION OF DUTY TO DISCLOSE DISCOVERABLE ELECTRONIC EVIDENCE, FOR FAILING TO PERMIT THE PETITIONER TO PRESENT THE TESTIMONY OF HIS EXPERT WITNESS AND DENYING A CONTINUANCE OF TRIAL

V. GROUND FIVE: COURT'S IMPOSITION OF SENTENCE AND FINDING THE PETITIONER WAS A SEXUALLY VIOLENT PREDATOR WERE IN ERROR AND CONSTITUTED AN ABUSE OF DISCRETION

(Doc. 1-3).

It is first necessary to determine whether Carter's claims presented in his *habeas* Petition are cognizable in a federal *habeas* proceeding and whether they have been exhausted in the state courts and, if not, whether the circumstances of his case are sufficient to excuse his procedural default. The Court will then proceed to address the merits of the exhausted claims.[4]

### B. Non-Cognizable Claim—Ground Five

"In order to be eligible for *habeas* corpus relief, a petitioner must be 'in custody in violation of the Constitution or laws or treaties of the

---

[4] The Respondents note that "it appears that Petitioner has simply copied and pasted his 1925(b) statement and his appellate brief in the Superior Court into his *habeas* petition." (Doc. 4, p. 12, n. 3). Although Petitioner's Superior Court brief is not part of the record, Respondents' observation appears to be correct. The Petition reads like a Superior Court brief and not like a *habeas* petition. Nevertheless, Petitioner's "claims" will be treated as such and not as grounds in support of a state court appeal which, in reality, is a more appropriate classification of Petitioner's arguments.

United States.'" *Chowdhury v. Pennsylvania Board of Probation and Parole*, No. CV 24-5091, 2026 WL 2145002, at *5 (E.D. Pa. June 18, 2026), *report and recommendation adopted sub nom. Chowdhury v. Commonwealth of PA*, No. CV 24-5091, 2026 WL 2143227 (E.D. Pa. July 24, 2026) (quoting 28 U.S.C. § 2254(a)). "Accordingly, a claim must be 'cognizable' for purposes of *habeas* review, meaning that such review is limited to determining whether a conviction violates federal law. A violation of state law or state criminal procedure rules does not raise a viable *habeas* claim." *Id*. (citing *Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.")).

In Ground Five, Petitioner appears to raise two separate but related claims, *viz*., that the trial court erred in applying Pennsylvania sentencing law and that the trial court erred in classifying him as a Sexually Violent Predator. Each claim will be discussed separately. With regard to the imposition to sentencing, Petitioner argues:

> Imposition of a sentence of 84 to 168 months of incarceration, which is the maximum consistent with the standard range of the applicable Guidelines, was not

> "necessary" to address "the nature and circumstances of the crime" in light of "the history, character and condition of the defendant." 42 Pa.C.S. § 9725. To the contrary, the extent of the confinement imposed was not "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victims and on the community and the rehabilitative needs of the Defendant." Id. § 972l(b ). At an initial sentencing, these legislative criteria are "designed to inform the court and to cabin its discretionary sentencing authority." Commonwealth v. Pasture, 630 Pa. 440, 451, 107 A.2d 21, 27 (2014).

(Doc. 1-2, pp. 42-43). These arguments are based entirely on Pennsylvania law and do not implicate a violation of the "Constitution or laws or treaties of the United States." Accordingly, this claim is not cognizable in a Section 2254 petition. *See King v. Superintendent*, No. CV 26-2335, 2026 WL 2566167, at *8 (E.D. Pa. Aug. 31, 2026) (claim that trial court improperly imposed a sentence above the state sentencing guidelines is not cognizable on *habeas* review). *Salaam v. Slaughter*, No. 20-CV-07820 (RMB), 2025 WL 3718635, at *10 (D.N.J. Dec. 22, 2025) ("As a threshold matter, sentencing determinations are generally matters of state law and are not cognizable on federal *habeas* review absent a showing that the sentence was imposed on constitutionally proscribed grounds.") (citing *Jones v. Superintendent of*

*Rahway State Prison*, 725 F.2d 40, 43 (3d Cir. 1984)); *Carrera v. Mason*, No. 3:24-CV-986, 2025 WL 979004, at *5 (M.D. Pa. Mar. 31, 2025) ("Generally, sentencing is a matter of state criminal procedure that does not fall within the purview of federal *habeas corpus*.").

Similarly, much of Petitioner's argument regarding his classification as a Sexually Violent Predator and application of SORNA turn entirely on state law. These claims are not cognizable in this Section 2254 matter. There are portions of the claim that might, however, be cognizable. In adjudicating Carter's direct appeal, the Pennsylvania Superior commented that "Carter has filed a brief that is difficult to follow." 2023 WL 4417528 at *6. Because his *habeas* petition is simply a carbon copy of his brief to Superior Court, it is no less "difficult to follow" leaving this Court with the tedious task of detangling Petitioner's federal claims from the mass of state law claims involved in this issue. Although the Petition references potentially cognizable federal claims, as discussed below, those claims are procedurally defaulted.

**C. Procedurally Defaulted Claims – Grounds Two, Three and Five**

"To properly exhaust state remedies, a Section 2241 *habeas* petitioner must invoke 'one complete round of the state's established appellate review process.'" *Barr v. Shenk,* at *4 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). "The petitioner bears the burden of showing that all claims alleged have been 'fairly presented' to the state courts, and 'it is not enough that the petitioner presents to the state court the facts upon which a federal claim is based.'" *Id.* (quoting *Brown v. Cuyler*, 669 F.2d 155, 158 (3d Cir. 1982).

"Federal *habeas* courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "A state court's invocation of a

procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Id.* "A state procedural rule is 'independent' if it is separate from the federal issue." *Leake v. Dillman*, 594 F. App'x 756, 758 (3d Cir. 2014).

**1) Ground Two – View of the Crime Scene**

In his second ground for relief, Carter argues that "[t]he Trial Court erred and abused its discretion in denying the Petitioner's motion to permit the jury to view the premises and locations on which the offenses were allegedly committed." (Doc. 1-3, p. 14). The Superior Court held that Petitioner waived that claim on appeal. Quoting the trial Court, the Superior Court stated:

> The trial court explained:
>
> > At the hearing on [Carter's] omnibus motion, defense counsel asked this court to hold its ruling in abeyance until the defense had an opportunity to review the video and photographs taken by the Commonwealth of various locations at [Pittston Area High School]. [See] N.T. Omnibus Hearing, 6/9/2020, at 28. He indicated that he may be satisfied with the photos and video of the premises he received from the

> Commonwealth at the hearing. [See id.] Because [Carter] did not raise this issue again at any point, this court presumed that he was satisfied with the discovery provided by the Commonwealth and thus the issue is waived. Trial Court Opinion, 2/14/2022, at 64.
>
> Again, Carter does not address, much less dispute, this finding of waiver or the fact that the trial court never ruled on his motion because he did not renew it before the trial court. Even if the issue were not waived for this reason, which it is, we would also find the issue was waived because of Carter's failure to meaningfully develop the issue. See Pa.R.A.P. 302(a) (stating that issues not raised in the trial court are waived and may not be raised for the first time on appeal); Commonwealth v. Love, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments that are not sufficiently developed are waived). No relief is due.

*Commonwealth v. Carter*, 2023 WL 4417528 at * 10.

The state courts' determination that the issue was waived for Carter's failure to develop it in the trial court forecloses federal review of this claim. *Rosario v. Bohinski*, No. 3:25-CV-01973, 2026 WL 2280635, at *6 (M.D. Pa. Aug. 7, 2026) (citing *Thomas v. Sec'y, Pennsylvania Dep't of Corr.*, 495 F. App'x 200, 205 (3d Cir. 2012); *Troutman v. Overmyer*, No. 2:14-CV-1592, 2015 WL 1808640, at *2 (E.D. Pa. Apr. 21, 2015)). "Federal *habeas* courts reviewing the

constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Id*. "Case law has held that Pa. R. App. P. 302(a), and other similar state procedural waiver rules, are adequate and independent state rules for the purposes of procedural default." *Troutman v. Overmyer*, No. 2:14-CV-1592, 2015 WL 1808640, at *12 (E.D. Pa. Apr. 21, 2015) (collecting cases).

Because the Pennsylvania Superior Court deemed Petitioner's second claim waived based on a state rule that is firmly established and consistently followed, this claim is procedurally defaulted.

**2) Gound Three – Denial of Exclusion of Electronic Evidence**

Petitioner's third ground challenges the trial court's denial of his motion *in limine* to exclude certain electronic evidence at his trial. The Superior Court held this claim was waived on appeal. In addressing this claim the Court stated:

> The trial court found this issue was waived for three reasons. First, the trial court found Carter failed to identify with specificity in his Rule 1925 statement which items of evidence he argues the Commonwealth should have been precluded from admitting. See Trial Court Opinion, 2/14/2022, at 65, citing Pa.R.A.P. 1925(b)(4). Second, the trial court noted that Carter requested the court to hold the motion in limine in abeyance until trial, the trial court did so, and Carter never renewed the motion at trial. As such, the trial court never ruled on the motion. See Trial Court Opinion. 2/14/2022, at 65. And finally, the trial court pointed out, Carter did not object to the introduction of any social media evidence at trial. See id. at 65-66; Commonwealth v. McGriff, 160 A.3d 863, 866 (Pa. Super. 2017) (stating that a party must make a timely objection to the admission of evidence in order to preserve the issue for appellate review).

> Carter does not address the issue of waiver at all in his brief to this Court. As such, he does not dispute that he did not specify which electronic evidence he alleged the Commonwealth should have been precluded from admitting in his Rule 1925 statement or otherwise. It also means he does not dispute that he failed to renew his motion in limine in front of the trial court or failed to object to the admission of the electronic evidence he purports to challenge at trial. He certainly does not point to the place in the record where either any such renewal or objection occurred, as is his clear burden to do. See Commonwealth v. Baker, 963 A.2d 495, 502 (Pa. Super. 2008) (finding the appellant's claim was waived when he did not point to the location in the record where the claim was preserved, in violation of Pa.R.A.P. 2117(c) and 2119(e)).
>
> Accordingly, Carter has failed to provide us with any reason to find that the trial court made any error in concluding Carter waived this issue and therefore, that he is entitled to any relief on this claim.

*Id*. at * 8.

For the same reasons discussed above with regard to Gound Two, Ground Three is procedurally defaulted.

**3) Ground Five – Classification as a Sexually Violent Predator**

As noted above, Plaintiff challenges various aspects of his sentence including his classification as a Sexually Violent Predator and the application of SORNA. While most of Petitioner's arguments rely

exclusively on state law, the Petition makes reference to federal constitutional claims, although those claims are not fully articulated. The Superior Court, however, found Petitioner's claims waived based on state procedural rules, explaining:

> Carter also claims the trial court erred in determining he is an SVP. Specifically, he makes a series of bald allegations: the trial court erred by applying Subchapter I of SORNA II to this case as that violated the ex post facto and due process clause of both the state and federal constitutions; the definition of "mental abnormality" is unconstitutionally vague; there was not clear and convincing evidence that he has any such "mental abnormality"; the expert's SVP report was improper as it was not based on the Static 99-R risk assessment and the expert did not interview Carter; and the trial court's order that Carter be assessed for SVP status was untimely and Carter was not provided the assessment in a timely manner. These claims fail.
>
> As an initial matter, Carter's claims are minimally developed, often amounting to no more than summary assertions, and are arguably waived for that reason. See Love, 896 A.2d at 1287. His final claim, having to do with the timing of the assessment order and the receipt of the assessment report, was not one of the 31 allegations of error included in his Pa.R.A.P. 1925(b) statement, and it is therefore waived for that reason. See Commonwealth v. Lord, 719 A.2d 306, 309 (Pa. 1998). Similarly, as the Commonwealth points out, Carter does not point to the place in the record where he objected to the definition of "mental abnormality" as unconstitutionally vague before

> the trial court, and that claim is waived for that reason. See Baker, 963 A.2d at 502.
>
> His other assertions are without merit. First, Carter claims the trial court erred by applying Subchapter I of SORNA II to him. However, as the trial court repeatedly noted in its opinion, Carter committed his offenses after December 20, 2012, and therefore Subchapter H is the subchapter that is applicable to him, and the one the trial court applied. See 42 P.a. C.S.A. § 9799.11(c) (providing that Subchapter H applies to offenses committed on or after December 2012). Despite the clarity provided by the trial court regarding this issue, Carter continues to maintain the trial court found him to be an SVP pursuant to Subchapter I. Because this claim continues to be "based on incorrect premises," Commonwealth's Brief at 31, it affords Carter no relief.
>
> He also claims there was insufficient evidence for the trial court to find he was an SVP. This claim is waived, and in any event, meritless.

Because the potentially cognizable claims raised in Ground Five were deemed waived based on state procedural rules, those claims are procedurally defaulted.

**4) Petitioner's Procedural Default Cannot be Excused**

Petitioner has not responded to the Respondents' argument that some of his claims are procedurally defaulted and there appear to be no reasons to justify the default. "If a claim is found defaulted, the federal

court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice." *Angelillo v. Warden SCI-Coal Township*, 3:25CV1929, 2026 WL 1896215, at *3 (M.D. Pa. July 1, 2026) (citing *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000)). "To demonstrate 'cause' for a procedural default, a petitioner must point to some objective external factor which impeded their efforts to comply with the state's procedural rule." *Culley v. Adams*, 1:23-CV-01513, 2026 WL 2137345, at *8 (M.D. Pa. July 24, 2026) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Petitioner here has not crossed this first hurdle. There has been no assertion that some objective external factor impeded Petitioner's efforts to comply with the state's procedural rules. Accordingly, "cause" has not been established to excuse the procedural default.

**C. Exhausted Claims – Grounds One and Four**

**1) Ground One**

In Plaintiff's first ground for relief, he asserts "The Trial Court erred and abused its discretion, as well as denied the Petitioner due

process, in refusing the Petitioner's Omnibus Pretrial Motions to suppress prior statements he made and to suppress physical evidence.” (Doc. 1-3, p. 2). In support, he alleges he was questioned by the police “repeatedly, for over three (3) hours” and was Mirandized and signed a consent to search form only after the interrogation was over. (*Id.* at p. 5). Petitioner asserts that “[a]ny statements obtained from him were not knowingly, intelligently, or voluntarily given and were obtained in violation of his rights under federal and state law.” (*Id.*). He argues that his arrest was “the fruit of, and tainted by, the illegal questioning by the agents of the Commonwealth of Pennsylvania” and “any physical evidence against him obtained by the Commonwealth from the seizure and inspection of his cellphone, without first obtaining a search warrant, was improper and [should have been] suppressed.”

Petitioner’s suppression motion was the subject of a June 9, 2020, hearing held by the trial court after which the motion was denied. The Superior Court affirmed the denial of the suppression motion, reasoning as follows:

> In his first claim, Carter essentially alleges the trial court erred in denying his motion to suppress his statements

given at the October 22, 2018 interview as they were obtained in violation of his constitutional rights. According to Carter, his statements were involuntarily given because he was questioned over a three-hour period and threatened by Detective Balogh, and was not advised of his constitutional rights until after the interview was over. This claim fails.

In rejecting this claim, the trial court first noted that Miranda warnings are only required before an interview when a person is in police custody. A person is in custody for purposes of a custodial interrogation, the court explained, when the person is physically deprived of his freedom in any significant way or reasonably believes his freedom of action or movement is restricted by the interrogation. See Trial Court Opinion, 2/14/2022, at 58, citing Commonwealth v. DiStefano, 782 A.2d 574, 579 (Pa. Super. 2001). "Police detentions become custodial when under the totality of the circumstances the conditions and/or duration of the detention become so coercive as to become the functional equivalent of arrest." *Id*.

The trial court found Carter was not in custody when he was interviewed by Detective Balogh and Officer Boone. The court explained:

> Balogh testified credibly about the circumstances of the interview. [Carter] was interviewed at the principal's office of the high school where [Carter] arrived to teach band practice. The principal brought him to the office and left him with the investigators. The door was closed for privacy because of the sensitive nature of the topics that were to be discussed. The investigators told [Carter] why they wanted to speak to him and he agreed to talk with them. Balogh was in plain clothes. The

> Commonwealth's evidence reflects that the tone of the interview was cordial. [Carter] never asked to leave, was not restrained from doing so, and was not threatened. The totality of the circumstances do not indicate coercion so as to constitute the functional equivalent of an arrest.

We find no error in the court's conclusion that Carter was not in custody during his interview with the officers, and therefore that the officers were not required to give Carter Miranda warnings. Carter does not address, much less dispute, the court's finding that he was not in police custody, but he does make a general allegation that Detective Balogh intimidated and threatened him, and recites his testimony at the suppression hearing in support of this contention. He also maintains that Detective Balogh was not credible. However, it is clear the trial court credited Detective Balogh's testimony, and not Carter's, as was its prerogative to do. See Commonwealth v. Yorgey, 188 A.3d 1190, 1198 (Pa. Super. 2018) (stating that credibility determinations are within the exclusive province of the suppression court). As such, Carter does not provide any persuasive argument to disturb the court's conclusion that he was not in police custody.

Carter does claim he did not voluntarily waive his constitutional rights. Even though the trial court found that Detective Balogh was not required to give Miranda warnings because Carter was not in custody, it noted he nonetheless did so, and found Carter voluntarily waived his rights before making his statements to the officers. To that end, the court noted that Detective Balogh read the constitutional waiver questions on the constitutional waiver form to Carter, each of which Carter initialed

after indicating he was agreeing to waive that right, before talking to Carter about the allegations.
The court further quoted the exchange between Carter and Detective Balogh at the beginning of Carter's audio-taped statement. See Trial Court Opinion, 2/14/2022, at 60-61. It found this exchange "ma[de] clear that [Carter] was informed of his Miranda rights and understood the warnings both during and prior to the recording." Id. at 61. During the exchange, Carter also specifically stated that he was agreeing to speak with the officers and was "not under duress or anything like that." Id.

Carter challenges the trial court's conclusion that he voluntarily waived his constitutional rights before giving his statements, again alleging he was threatened by Detective Balogh and that he also was not read his rights until after the interview concluded. Again, Carter testified to this effect at the suppression hearing, and the trial court did not credit this testimony. Instead, despite Carter's allegations that Detective Balogh's testimony was not credible, the trial court credited the detective's testimony that he thoroughly reviewed Carter's constitutional rights with him before taking any statements, and Carter waived those rights without any coercion. See Yorgey, 188 A.3d at 1198. Based on the above, we disagree with Carter that the trial court erred by denying his motion to suppress the statements he made to police.

We note that Carter also makes a bald allegation inside his first claim that the trial court should have suppressed the evidence from his cell phone because it was obtained without a search warrant. In the first place, this argument is not included in his statement of questions involved section, and it is waived for that reason alone. See Pa.R.A.P. 2116(a). In any event, the trial court found

> that Carter allowed the officers to look at his phone, handed over his phone and provided the passcode to open the private folder in Snapchat. He signed a consent to warrantless search form. The court concluded that the credible testimony of Detective Balogh and Officer Boone established that Carter's consent was voluntary and not the product of coercion. Again, Carter does not offer any convincing argument that the trial court erred in reaching this conclusion.

Id. at **6-7.

When presented with the facts of this claim, the state courts concluded that Carter was not entitled to relief. A suppression hearing was held before the trial court and the court found that Carter was not under a custodial detention. The trial court made a credibility determination and found the Detective to be credible. Based on the evidence presented at the suppression hearing, the trial court found that Carter was brought to the principal's office where he was interviewed and the tone was cordial. Carter was told why the investigators wanted to talk with him and he agreed to the interview. Carter never asked to leave, was not restrained from doing so, and was not threatened. Accordingly, the trial court found that based on the

totality of the circumstances, the interview of Carter was not a custodial interrogation and the Superior Court affirmed.

*Miranda* serves to exclude from trial statements made by a defendant during a custodial interrogation. See *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Thus, an individual's Miranda rights apply only when that individual is "in custody" and subjected to "interrogation." See *Illinois v. Perkins*, 496 U.S. 292, 296 (1990). In determining "whether an individual is in custody, the ultimate inquiry is 'whether there is a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.'" *Reinert v. Larkins*, 379 F.3d 76, 86 (3d Cir. 2004) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation omitted)). When the individual has not been openly arrested when the statements are made, "'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so.'" *Id.* (quoting *Steigler v. Anderson*, 496 F.2d 793, 799 (3d Cir. 1974) (internal quotation omitted)). "Interrogation" for

*Miranda* purposes includes those words and actions "that the police should know are reasonably likely to elicit an incriminating response." See *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Here, Carter was not subjected to the type of custodial interrogation that triggers *Miranda*. He was not under arrest. He voluntarily spoke with the investigators and there was no evidence to suggest that Carter was restrained in any way from breaking off the encounter, let alone restrained to a degree associated with a formal arrest. The state courts' decisions were neither contrary to, nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Further, the decisions were not based on an unreasonable determination of the facts in light of the evidence. And, after conducing a hearing and making credibility determinations, the trial court found that Carter was indeed Mirandized prior to the interview. Accordingly, the court will deny this claim.

Likewise, Carter's argument that he is entitled to *habeas* relief based on the trial court's failure to suppress physical evidence fails. As

a general rule, Fourth Amendment exclusionary-rule claims are cognizable on federal *habeas corpus* review only if there has been no opportunity for full and fair litigation of the claim in the state courts. *See Reed v. Farley*, 512 U.S. 339 (1994); *Withrow v. Williams*, 507 U.S. 680 (1993); *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42 (3d Cir. 1984).

Here, it is clear that Carter was previously afforded a full and fair hearing on this claim, having raised this issue with the Luzerne County Court of Common Pleas, and subsequently appealing this issue to the Superior Court, which affirmed the trial court. Because Carter has received a full and fair hearing in which to present this Fourth Amendment claim, his instant attempt to relitigate this issue is meritless. *See Stone v. Powell*, 428 U.S. 465, 481 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial."); see also *Gilmore v. Marks*, 799 F.2d 51, 56 (3d Cir.

1986) ("[A] federal court may not reexamine the state court's determination that no Fourth Amendment violation occurred.").

**2) Ground Four**

In Ground Four, the Petitioner alleges that the Commonwealth failed to permit his expert to perform a proper forensic examination of his cell phone which contained information critical to his defense. He asserts that he requested a continuance of his trial to allow for a proper examination or for sanctions that would exclude from trial any evidence derived from Carter's cellphone. As with his other claims, Ground Four contains a mix of arguments, mostly based on state law and referencing an abuse of discretion standard, appropriate on a direct appeal but not here. Similarly, absent is a discussion was to why the Superior Court's decision was either contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). If, as the Respondents speculate, the argument presented here was developed prior to the Superior

Court's decision, the absence of such argument would make sense. Nevertheless, despite Respondent's argument to the contrary, it does appear that Ground Fourt contains a federally cognizable claim that was presented to the Superior Court. Petitioner asserts:

> The Petitioner submitted to the Trial Court that if the September 28, 2020 Trial was not continued and Mr. Carter was not supplied with his Apple iPhone 6S telephone in the possession of the Commonwealth for forensic examination by his defense experts, his due process rights under the Sixth Amendment of the United States Constitution as made applicable to the Commonwealth through the Fourteenth Amendment of the United States Constitution as well as under the due process clause of the Constitution of the Commonwealth of Pennsylvania will be violated, and he will be unable to present an adequate defense to these charges.

(Doc. 1-3. P. 35). He argued: "The United States Supreme Court in *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964), applied a due process standard pursuant to the due process clause of the Fifth and Fourteen Amendments, which provide independent protections against arbitrary denials of continuance requests. See 376 U.S. 588-589 and n.9. 'At the point where such a refusal implicates the right to effective assistance of counsel, the guarantees of the Sixth and Fifth Amendments essentially

converge, as necessarily do the constitutional inquiries forced by such a request and its denial.' *Sampley v. Attorney General of North Carolina*, 786 F.2d 610,613 (4th Cir. 1986) (citing Morris, 461 U.S. at 11-12)." (*Id*. at p. 37).

The Pennsylvania Superior Court addressed the substance of this federal claim, although its analysis focused heavily on the state law issues which Petitioner also presents here. Although lengthy, the Superior Court's discussion of this claim bears quoting *in toto*:

> Carter alleges the trial court erred by failing to grant his motion for a continuance in order to allow his expert witness to examine his cell phone and its contents. He argues the court should have granted the motion as it was in the interests of justice and filed more than 48 hours before the start of trial. He further asserts the trial court's refusal to grant the continuance effectively deprived him of his right to counsel. This claim fails.
>
> The decision of whether to deny a continuance is within the sound discretion of the trial court. *See Commonwealth v. Sandusky*, 77 A.3d 663, 671 (Pa. Super. 2013). "A myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. However, not every restriction on counsel's time or opportunity to investigate ... violates a defendant's Sixth Amendment right to counsel." *Id*. (citations and brackets omitted). Therefore, the trial court exceeds its constitutional authority only when it exercises its

discretion to deny a continuance on the basis of an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Id*. at 671-672 (citation omitted). Moreover, our Rules of Criminal Procedure provide that a trial court may grant a continuance in the "interests of justice." See Pa.R.Crim. P. 106(A). "A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding." Pa.R.Crim.P. 106(D).

Here, the trial court found it had not abused its discretion in denying the motion for a continuance Carter filed on the Friday before trial was set to begin. The court noted that prior to this continuance motion, the trial had already been continued numerous times due to previous defense motions filed on September 20, 2019, October 24, 2019 and January 6, 2020.

The court also noted it specifically referenced the January 6, 2020 continuance motion at the June 9, 2020 hearing on Carter's omnibus pretrial motions, and that the January continuance had been granted because of the issue with the cell phone and yet, "absolutely nothing has happened from that point to today." N.T. Omnibus Motion Hearing, 6/9/2020, at 8. The court recounted that defense counsel stated the defense had finally hired an expert the day before and agreed to resolve the issue. The court continued:

> The defense raised the issue of digital discovery in January and June of 2020. Defense counsel indicated they had hired an expert on June 8, 2020. Despite the unambiguous instructions of this court at the Omnibus Hearing in June, arrangements were not made for Sperber to look at the phone until the

afternoon of Tuesday, September 22, 2020, six days before the scheduled trial date. Although the Commonwealth had offered to set up a meeting for the defense expert to review the phone on Monday, September 21st, the earliest the defense could meet was on Tuesday September 22nd after Yarnall had been refused entry by the Sheriff due to COVID protocols on September 17th. After Sperber voluntarily left the meeting on Tuesday, the defense did not raise the issue that they were unable to access the phone until Friday when accompanied by the final motion seeking a continuance.

During the meeting, Sperber was given access to [two software programs], and [Detective Balogh's supervisor, who was at the September 22nd meeting] testified that Sperber would have been able to view the file with these programs. Notably, this is not a case with voluminous digital discovery. The instant case involved only two relevant photographs. In addition, the defense had been aware that the Commonwealth was unwilling to release the cell phone for months before Sperber's visit. If time to continue to view the images was the issue, it is undisputed that no one from the District Attorney's office asked Sperber to leave before he was ready. During the meeting itself, Yarnall was in contact with the defense counsel and notified him of the issues he believed Sperber was having.

As we said at the hearing on [Carter's] final motion for continuance: "[T]here is no question in the court's mind that [Carter] has had more than ample opportunity to get whatever digital discovery they sought, okay. And if necessary, to seek the appropriate court interventions." N.T. Motions Hearing, 9/28/[20]20, at 131. As a result, this court did not exercise its discretion to deny the final

> requested continuance on the basis of "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Instead, the motion for continuance was properly denied as [Carter] failed to avail himself of the many opportunities provided to obtain the discovery he sought and to avail himself of the court's assistance, if needed, in a timely fashion.

Trial Court Opinion, 2/14/2022, at 52-53 (emphasis in original).

Carter does nothing in his brief to challenge the court's finding that he failed to make timely and reasonable efforts to have a defense expert examine the cell phone and relevant electronic evidence. Carter agreed to have his cell phone analyzed on October 22, 2018, and the Commonwealth filed informations against him in July 2019. He was well aware there were two photos at issue on the cell phone. Yet, he does not offer any explanation as to why he did not hire an expert to examine the phone until June 8, 2020, and then did not arrange to have such an examination occur until days before trial, on September 17, despite multiple requests by the Commonwealth for the expert's name and repeated offers to make arrangements for any such expert to view the phone.

Instead, Carter broadly "contends that the trial [c]ourt's explanation does not denote a careful consideration of the matter. The decision reflects a myopic insistence upon expeditiousness in the face of [his] request." Appellant's Brief at 55. We disagree, and conclude that the trial court did not abuse its discretion in denying the continuance motion. No relief is due.

2023 WL 4417528 at **8-10.

The Superior Court set forth the proper federal constitutional standard in addressing this claim. The Superior Court quoted *Commonwealth v. Sandusky*, 77 A.3d 663, 671 (Pa. Super. 2013) quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) which set forth the standard applicable here and which was properly employed by the Superior Court in addressing Petitioner's claim, *viz*.:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

575 U.S. at 589-90 (cleaned up). In rejecting Petitioner's claim, the Superior Court relied on the fact that "the trial had already been continued numerous times due to previous defense motions filed on

September 20, 2019, October 24, 2019 and January 6, 2020" and that the trial court "noted it specifically referenced the January 6, 2020 continuance motion at the June 9, 2020 hearing on Carter's omnibus pretrial motions, and that the January continuance had been granted because of the issue with the cell phone." The Superior Court also noted that "Carter does nothing in his brief to challenge the court's finding that he failed to make timely and reasonable efforts to have a defense expert examine the cell phone and relevant electronic evidence." *Id*.

Here, it cannot be said that the denial of the continuance was "so arbitrary as to violate due process." The trial was continued multiple times and on the basis that the phone needed to be examined. Carter was aware of the issue as early as October 22, 2018, yet failed to hire an expert until June 8, 2020, and did not arrange to have the phone analyzed until months later, shortly before trial. He cannot now assert that the denial of a continuance was arbitrary in violation of due process and his right to counsel when he was given ample time to hire an expert and have the phone examined. Accordingly, it must be said that the trial court's "exercise of its discretion [in denting the

continuance] did not rise to the level of a due process violation." *Gaines v. Brittain*, No. CV 19-1160, 2021 WL 1124938, at *9 (W.D. Pa. Mar. 23, 2021).

**Conclusion**

For the reasons set forth above, the Petition will be denied. An appropriate Order will follow.

Dated: September 4, 2026

***/s/ Leo A. Latella***
Leo A. Latella
United States Magistrate Judge